**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RONDA BERENS, et al. | : | CIVIL CASE NO. |
|     Plaintiffs, | : | 3:24-CV-01188 (JCH) |
| | : | |
| v. | : | |
| | : | |
| YALE NEW HAVEN HEALTH | : | JULY 10, 2025 |
| SERVICES CORPORATION, | : | |
|     Defendant. | : | |

**RULING ON MOTION TO DISMISS AMENDED COMPLAINT (DOC. NO. 34)**

**I.      INTRODUCTION**

The plaintiffs, Ronda Berens, Dalton Kelly, Dilara Baunach, Elaine Miner, Jessica Grasso, Kathy Farrelly, and Donna Savoie, bring this suit against the defendant, Yale New Haven Health Services Corporation ("YNHHS"), alleging that YNHHS violated the plaintiffs' constitutional rights protected under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, made actionable pursuant to section 1983 of title 42 of the U.S. Code.  See Amended Complaint ("Am. Compl.") (Doc. No. 31).

Before the court is YNHHS' Motion to Dismiss Amended Complaint (Doc. No. 34), Memorandum in Support of Motion to Dismiss Amended Complaint ("Def.'s Mem.") (Doc. No. 34-1), and Reply Memorandum in Support of Motion to Dismiss ("Def.'s Reply") (Doc. No. 50).  The plaintiffs oppose the Motion.  See Opposition to Motion to Dismiss Amended Complaint ("Pl.s' Opp'n") (Doc. No. 45).  For the reasons stated below, the court grants the Motion.

**II.     BACKGROUND**

The allegations of the Amended Complaint relate to YNHHS' response to the COVID-19 pandemic and its policy that YNHHS employees receive COVID-19 vaccines

1

or, as an alternative, undergo weekly COVID-19 testing.  See Am. Compl. at ¶¶ 12, 28–31.

The plaintiffs allege YNHHS and the State and federal government worked in partnership to develop COVID-19 policies, administer COVID-19 tests, and rollout COVID-19 vaccines.  Id. at ¶¶ 5–7, 36.  Key components of this alleged partnership included an alleged arrangement whereby healthcare providers received federal monies for treating COVID-19 patients and State monies for administering COVID-19 tests.  Id. at ¶¶ 44–48, 52–54.  The plaintiffs characterize this arrangement as creating a financial incentive for private healthcare institutions to artificially inflate the number of instances of COVID-19 hospitalizations and infections.  See id. at ¶¶ 50, 56.  That COVID-19 infections were inflated, as the plaintiffs allege, is partially a result of the use of COVID-19 tests that frequently produced false positive results.  Id. at ¶ 56.  Using these allegedly inflated statistics, private healthcare institutions allegedly worked in partnership with government entities to justify COVID-19 public health policies.  See id. at ¶ 59.

Around October 15, 2020, the Connecticut Department of Public Health allegedly published a Mass Vaccination Plan ("MVP").  Id. at ¶ 70.  The MVP identified YNHHS as a private-sector partner that would participate in working groups to coordinate the rollout of the COVID-19 vaccine.  Id. at ¶ 73.  Allegedly, members of YNHHS' executive and clinical staff served on this working group.  Id. at ¶¶ 75–82.  For instance, Professor Jason Schwartzman of Yale School of Medicine and Public Health allegedly served on a subcommittee tasked with advising the State about COVID-19 vaccinations.  Id. at ¶ 76.

The Connecticut Hospital Association, of which YNHHS is allegedly a member, also advised the State of Connecticut about COVID-19 public health policies. Id. ¶¶ 84–85. On June 24, 2021, the Connecticut Hospital Association issued a recommendation that healthcare providers should require staff members to receive the COVID-19 vaccine. Id. at ¶ 86. On July 12, 2021, YNHHS adopted the Association's recommendation and issued a mandate that its employees receive the COVID-19 vaccine as a condition of their continued employment. Id. at ¶¶ 28, 87.[1] The plaintiffs allege that an employee of YNHHS, Dr. Thomas Balcezak, played an important role in encouraging the Connecticut Hospital Association and YNHHS to adopt COVID-19 vaccine policies. Id. at ¶ 88. On August 19, 2021, the State of Connecticut instituted its own vaccine mandate: in so doing, it allegedly cited similar mandates implemented by private healthcare providers as a justification for its own vaccine mandate. Id. at ¶ 90.

In implementing its vaccination policy, announced in July 2021, YNHHS allegedly wished to immunize "100 percent" of its employes against the COVID-19 virus through vaccination. Id. at ¶ 29. On October 1, 2021, YNHHS issued a requirement that employees, who had received an exemption from receiving the COVID-19 vaccine, receive weekly COVID-19 tests administered by YNHHS. Id. at ¶ 28.

The plaintiffs make a number of allegations about the safety and efficacy of the COVID-19 vaccine. In the interest of concision, the court will only summarize what it understands to be key points of the plaintiffs' allegations concerning the COVID-19 vaccine. To begin, the plaintiffs refer to the COVID-19 vaccine in quotation marks

---

[1] On or around February 11, 2022, YNHHS subsequently expanded its COVID-19 vaccination policy to require that employees received a COVID-19 booster as a condition of their continued employment. Id. at ¶ 31.

3

because, in their view, the COVID-19 vaccine is not properly understood as a vaccine, instead, it is actually "an experimental gene therapy."  See id. at ¶ 4.  According to the plaintiffs, when YNHHS implemented its vaccination policy, "there was no scientific or evidence-based reason" to believe the "gene therapy" could prevent infection or transmission of COVID-19.  Id. at ¶ 3.  Even more, the plaintiffs allege that "individuals who are vaccinated [with the COVID-19 vaccine] become more likely to contract COVID-19 than individuals who did not receive the 'vaccine.'"  Id. at ¶ 116 (emphasis added).  Perhaps worst of all, according to the plaintiffs, is the allegation that the COVID-19 "gene therapy" is actually dangerous to those who receive it; indeed, the plaintiffs allege that the "gene therapy" "is the most dangerous 'vaccine' ever administered to the general public."  Id. at ¶ 135.  Despite the alleged ineffectiveness of the COVID-19 vaccine, YNHHS subjected the plaintiffs to a vaccine mandate, which the plaintiffs allege, was developed as part of a public-private partnership between YNHHS and government entities.  See id. at ¶¶ 74–90.

      The plaintiffs allege YNHHS violated their constitutional rights in implementing its COVID-19 vaccine mandate.  Ronda Berens ("Ms. Berens") sought a medical exemption from YNHHS' COVID-19 vaccination requirement; however, YNHHS allegedly denied her request both initially and after reconsideration.  Id. at ¶ 33.  Having refused to receive the COVID-19 vaccine, YNHHS allegedly terminated Ms. Berens for doing so around October 18, 2021.  Id.  Dalton Kelly ("Mr. Kelly") sought a religious exemption from YNHHS' COVID-19 vaccination policy but, as with Ms. Berens, YNHHS allegedly denied Mr. Kelly's request for an exemption and terminated him for refusing to receive the vaccine around October 18, 2021.  Id. at ¶ 34.  Dilara Baunach was also

4

allegedly terminated by YNHHS at an unspecified date in March 2022; the plaintiffs do not allege the grounds for Ms. Baunach's termination.  See id. at ¶ 16.

As for the remaining plaintiffs, Elaine Miner ("Ms. Miner"), Jessica Grasso ("Ms. Grasso"), Kathy Farrelly ("Ms. Farrelly"), and Donna Savoie ("Ms. Savoie"), they are referred to in the Amended Complaint using the present perfect tense to describe their employment status with YNHHS.  See id. at ¶¶ 17–20.  The Amended Complaint does not specify the dates these remaining plaintiffs were hired or terminated.  See id.  All that is alleged is that these remaining plaintiffs, Ms. Miner, Ms. Grasso, Ms. Farrelly, and Ms. Savoie, refused to receive the COVID-19 vaccine and were required to submit to weekly COVID-19 test results.  Id. at ¶ 35.

### III. LEGAL STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a Complaint as true, and draws all reasonable inferences in the nonmovant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action."  Iqbal, 556 U.S. at 678.

## IV.     DISCUSSION

According to the plaintiffs, their section 1983 claims arise from YNHHS having allegedly violated their constitutional rights by (1) requiring that the plaintiffs receive COVID-19 vaccines, even though such vaccines were ineffective at preventing the infection or transmission of the SARS-CoV-2 virus; and (2) treating the unvaccinated plaintiffs in an arbitrary and capricious manner by requiring them to undergo regular COVID-19 testing, when these plaintiffs were no more likely to contract the virus than vaccinated employees.  Am. Compl. at ¶¶ 129–152.  YNHHS responds that the plaintiffs' claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for two reasons: first, the plaintiffs fail to show YNHHS' treatment of its employees amounts to state action; and second, the plaintiffs have failed to allege a constitutional violation.  See Def.'s Mem. at 6–16; Def.'s Reply at 1–8.  The plaintiffs oppose YNHHS' arguments.  See Pl.s' Opp'n at 7–28.

"To state a claim under [section] 1983, a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87–88 (2d Cir. 2015) (internal quotation marks omitted).  The court will consider whether the allegations contained in the Amended Complaint plausibly suggest YNHHS' alleged actions can fairly be characterized as arising under the color of law.  Only if the plaintiffs plausibly allege YNHHS acted under color of state law will the court consider whether the plaintiffs' Amended Complaint contains allegations that plausibly give rise to the inference that YNHHS violated the plaintiffs' constitutional rights.

A.     State Action

The plaintiffs must allege facts raising a plausible inference that YNHHS acted under color of law.  There are a number of ways a plaintiff can attempt to establish that actions undertaken by a private entity, here YNHHS, amount to state action.  See Benzemann v. Citibank N.A., 622 F. App'x 16, 17 (2d Cir. 2015) (describing various tests for determining if a private party acts under color of state law).  Here, the plaintiffs assert that they have shown YNHHS acted under color of state law pursuant to the "joint action" test, also known as the "close nexus" test.  Pl.s' Opp'n at 9–21.  YNHHS argues that the allegations contained in the Amended Complaint do not raise a plausible inference of a close nexus between the State of Connecticut and YNHHS in creating the policies at issue, terminating Ms. Berens, Mr. Kelly, and Ms. Baunach, and requiring the remaining plaintiffs to undergo COVID-19 testing.  Def.'s Mem. at 12–13; Def.'s Reply at 3–7.

A private institution "will not be held to constitutional standards unless there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself."  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 52 (1999).  Importantly, "[a]ction taken by private entities with the mere approval . . . of the State is not state action."  Id.  Rather, a private actor may be viewed as a state actor when, inter alia, "the private actor operates as a willful participant in joint activity with the State or its agents[.]"  Cranley v. Nat'l Life Ins. Co. of Vermont, 318 F.3d 105, 112 (2d Cir. 2003).  In alleging a defendant acted under color of state law, "[i]t is not enough . . . for a plaintiff to plead state involvement in some activity of the institution alleged to have inflicted injury upon a plaintiff; rather, the plaintiff must allege that the state was involved with the activity that caused the injury

7

giving rise to the action." Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257–58 (2d Cir. 2008) (emphasis added) (internal quotation marks omitted).

The extent of the allegations connecting YNHHS to the State of Connecticut amount to observations that YNHHS, or individuals affiliated with it, served as advisors to state or private working groups attempting to formulate various COVID-19 response policies and that YNHHS received funding for performing COVID-19 services pursuant to these same policies.  See, supra, part II.

The allegations do not plausibly suggest that the State and YNHHS operated as willful joint participants in requiring YNHHS' staff members to receive COVID-19 vaccinations or undergo COVID-19 testing, let alone terminate employees for failing to become vaccinated.  Indeed, the plaintiffs allege in their Amended Complaint that the policies requiring them to receive COVID-19 vaccinations or tests were the result of policies adopted by YNHHS, not State law or regulations made applicable to YNHHS as a result of a coordinated effort undertaken by YNHHS and the State.  See Am. Compl. at ¶¶ 2, 28–35, 60, 135 (describing YNHHS' announcement, and implementation of its own COVID-19 vaccination and testing policies).

That YNHHS allegedly received state funding for administering COVID-19 related services similarly does not raise an inference that the State and YNHHS operated at a sufficiently close nexus.  As the Second Circuit has repeatedly explained, simply because a private entity receives government funds for performing certain services does not mean the private entity is a state actor.  Fabrikant v. French, 691 F.3d 193, 207 (2d Cir. 2012); Cranley v. Nat'l Life Ins. Co. of Vermont, 318 F.3d 105, 112 (2d Cir. 2003).

That this court concludes the plaintiffs have failed to allege facts raising the inference that YNHHS acted under color of law is consistent with the conclusions of other courts within this Circuit that private hospital systems, such as YNHHS, do not generally act under color of state law.  See Febres v. Yale New Haven Hosp., No. 19-CV-1195 (KAD), 2019 WL 7050076, at *2 (D. Conn. Dec. 23, 2019) ("As a general rule, private hospitals do not act under color of state law for [section] 1983 purposes." (internal quotation marks omitted)); see also Phillips v. White Plains Hosp., No. 23-CV-11326 (KMK), 2025 WL 448808, at *5 (S.D.N.Y. Feb. 10, 2025) ("Plaintiffs provide no information suggesting that White Plains Hospital's actions are fairly attributable to the state or constitute willful joint activity with the state[.]"); Cheeks v. Montefiore Med. Ctr., No. 23-CV-2170 (JMF), 2023 WL 8235755, at *1 (S.D.N.Y. Nov. 28, 2023) ("Montefiore, as a private hospital, is not a state actor for purposes of Section 1983[.]").

Accordingly, the court concludes the plaintiffs have failed to establish that YNHHS acted under color of state law.  For this reason alone, the court grants YNHHS' Motion; both counts of the plaintiffs' Amended Complaint are dismissed.  Having concluded that the plaintiffs have failed to allege facts sufficient to plausibly suggest YNHHS acted under color of state law, the court does not reach the question of whether the plaintiffs' allegations plausibly suggest YNHHS violated certain of their rights protected by the U.S. Constitution.

### B. Leave to Replead

Pursuant to Federal Rule of Civil Procedure 15(a) "the court should freely give leave when justice so requires."  Id.  Indeed, in this Circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead."  Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991).  It is appropriate to deny leave to plead

"where there is no merit in the proposed amendments or amendment would be futile." Hunt v. All. N. Am. Gov't Income Tr., Inc., 159 F.3d 723, 728 (2d Cir. 1998). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002).

If the plaintiffs are able to allege facts that raise a plausible inference YNHHS acted under color of state law, the court will give the plaintiffs leave to replead.

## V.    CONCLUSION

For the reasons discussed above, the court grants the defendant's Motion to Dismiss Amended Complaint (Doc. No. 34), accordingly, both counts of the plaintiffs' Amended Complaint are dismissed. This dismissal is without prejudice, and the court grants the plaintiffs leave to file an Amended Complaint if they are able to replead consistent with this Ruling. The Amended Complaint must be filed no later than twenty-one (21) days from the date this Ruling is entered on the docket.

**SO ORDERED.**

Dated at New Haven, Connecticut this 10th day of July 2025.

    /s/ Janet C. Hall
Janet C. Hall
United States District Judge