**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RONDA BERENS, et al. | : | CIVIL CASE NO. |
| Plaintiffs, | : | 3:24-CV-01188 (JCH) |
| | : | |
| v. | : | |
| | : | |
| YALE NEW HAVEN HEALTH | : | NOVEMBER 24, 2025 |
| SERVICES CORPORATION, | : | |
| Defendant. | : | |

**RULING ON MOTION TO DISMISS PLATINTIFF'S SECOND AMENDED COMPLAINT**
**(DOC. NO. 70)**

**I.    INTRODUCTION**

The plaintiffs, Ronda Berens, Dalton Kelly, Dilara Baunach, Elaine Miner, Jessica

Grasso, Kathy Farrelly, and Donna Savoie, bring this suit against the defendant, Yale

New Haven Health Services Corporation ("YNHHS"), alleging that YNHHS violated the

plaintiffs' constitutional rights protected under the Due Process and Equal Protection

Clauses of the Fourteenth Amendment, made actionable pursuant to section 1983 of

title 42 of the U.S. Code.  See Second Amended Complaint ("Sec. Am. Compl.") (Doc.

No. 63).

Before the court is YNHHS' Motion to Dismiss Plaintiff's Second Amended

Complaint (Doc. No. 70), and Memorandum in Support of Motion to Dismiss Amended

Complaint ("Def.'s Mem.) (Doc. No. 70-1).  The plaintiffs oppose the Motion.  See

Objection to Motion to Dismiss Plaintiff's Second Amended Complaint ("Pltf's Opp'n")

(Doc. No. 76).  The defendants replied in response to the Opposition.  See Reply

Memorandum in Support of Motion to Dismiss ("Def.'s Reply") (Doc. No. 84).  For the

reasons stated below, the court grants the Motion to Dismiss with prejudice.

## II.    BACKGROUND

### A.  Relevant Factual Background

The allegations in the Second Amended Complaint relate to YNHHS' response to the COVID-19 pandemic and its policy that YNHHS employees receive COVID-19 vaccines or, as an alternative, undergo weekly COVID-19 testing.  <u>See</u> Sec. Am. Compl. at ¶¶ 12, 28–31.

The plaintiffs allege that YNHHS and the State and federal government worked in partnership to develop COVID-19 policies, administer COVID-19 tests, and rollout COVID-19 vaccines.  <u>Id</u>. at ¶¶ 5–7, 36.  Key components of this alleged partnership included an alleged arrangement whereby healthcare providers received federal monies for treating COVID-19 patients and State monies for administering COVID-19 tests.  <u>Id</u>. at ¶¶ 44–48, 52–54.  The plaintiffs characterize this arrangement as creating a financial incentive for private healthcare institutions to artificially inflate the number of instances of COVID-19 hospitalizations and infections.  <u>See id</u>. at ¶¶ 50, 56.  That COVID-19 infections were inflated, as the plaintiffs allege, is partially a result of the use of COVID-19 tests that frequently produced false positive results.  <u>Id</u>. at ¶ 56.  Using these allegedly inflated statistics, private healthcare institutions allegedly worked in partnership with government entities to justify COVID-19 public health policies.  <u>See id</u>. at ¶ 59.

Around October 15, 2020, the Connecticut Department of Public Health allegedly published a Mass Vaccination Plan ("MVP").  <u>Id</u>. at ¶ 70.  The MVP identified YNHHS as a private-sector partner that would participate in working groups to coordinate the rollout of the COVID-19 vaccine.  <u>Id</u>. at ¶ 73.  Allegedly, members of YNHHS' executive and clinical staff served on this working group.  <u>Id</u>. at ¶¶ 75–89.

The Connecticut Hospital Association ("CHA"), of which YNHHS is allegedly a member, also advised the State of Connecticut about COVID-19 public health policies. Id. ¶¶ 89–90.  Allegedly YNHHS, the Connecticut Hospital Association, and the State agreed to coordinate vaccine responses.  Id. at ¶¶ 90-97.  On June 24, 2021, the Connecticut Hospital Association issued a recommendation that healthcare providers should require staff members to receive the COVID-19 vaccine.  Id. at ¶ 98.  On July 12, 2021, YNHHS adopted the CHA's recommendation and issued a mandate that its employees receive the COVID-19 vaccine as a condition of their continued employment. Id. at ¶¶ 28, 99.[1]  The plaintiffs allege that an employee of YNHHS, Dr. Thomas Balcezak, played an important role in encouraging the CHA and YNHHS to adopt COVID-19 vaccine policies.  Id. at ¶¶ 100-101.  On August 19, 2021, the State of Connecticut instituted its own vaccine mandate: in so doing, it allegedly cited similar mandates implemented by private healthcare providers as a justification for its own vaccine mandate.  Id. at ¶ 102-103.

In implementing its vaccination policy, announced in July 2021, YNHHS allegedly wished to immunize "100 percent" of its employes against the COVID-19 virus through vaccination.  Id. at ¶ 29.  On October 1, 2021, YNHHS issued a requirement that employees, who had received an exemption from receiving the COVID-19 vaccine, would receive weekly COVID-19 tests administered by YNHHS.  Id. at ¶ 28.

The plaintiffs make a number of allegations about the safety and efficacy of the COVID-19 vaccine.  In the interest of succinctness, the court will only summarize what it

_____

[1] On or around February 11, 2022, YNHHS subsequently expanded its COVID-19 vaccination policy to require that employees received a COVID-19 booster as a condition of their continued employment.  Id. at ¶ 31.

understands to be key points of the plaintiffs' allegations concerning the COVID-19 vaccine. To begin, the plaintiffs refer to the COVID-19 vaccine in quotation marks because, in their view, the COVID-19 vaccine is not a vaccine: instead, it is actually "an experimental gene therapy." Id. at ¶ 4. According to the plaintiffs, when YNHHS implemented its vaccination policy, "there was no scientific or evidence-based reason" to believe the "gene therapy" could prevent infection or transmission of COVID-19. Id. at ¶ 3. Even more, the plaintiffs allege that "individuals who are vaccinated [with the COVID-19 vaccine] become more likely to contract COVID-19 than individuals who did not receive the 'vaccine.'" Id. at ¶ 129. Perhaps worst of all, according to the plaintiffs, is the allegation that the COVID-19 "gene therapy" is actually dangerous to those who receive it; indeed, the plaintiffs allege that the "gene therapy" "is the most dangerous 'vaccine' ever administered to the general public." Id. at ¶ 147.

Despite the alleged ineffectiveness of the COVID-19 vaccine, YNHHS subjected the plaintiffs to a vaccine mandate, which the plaintiffs allege, was developed as part of a public-private partnership between YNHHS and government entities. See id. at ¶¶ 74–75.

The plaintiffs allege YNHHS violated their constitutional rights in implementing its COVID-19 vaccine mandate. Ronda Berens ("Ms. Berens") sought a medical exemption from YNHHS' COVID-19 vaccination requirement; however, YNHHS allegedly denied her request both initially and after reconsideration. Id. at ¶ 33. Having refused to receive the COVID-19 vaccine, YNHHS allegedly terminated Ms. Berens for doing so around October 18, 2021. Id.

Dalton Kelly ("Mr. Kelly") sought a religious exemption from YNHHS' COVID-19 vaccination policy but, as with Ms. Berens, YNHHS allegedly denied Mr. Kelly's request for an exemption and terminated him for refusing to receive the vaccine around October 18, 2021. Id. at ¶ 34.

Dilara Baunach was also allegedly terminated by YNHHS at an unspecified date in March 2022; the plaintiffs do not allege the grounds for Ms. Baunach's termination. Id. at ¶ 16.

As for the remaining plaintiffs, Elaine Miner ("Ms. Miner"), Jessica Grasso ("Ms. Grasso"), Kathy Farrelly ("Ms. Farrelly"), and Donna Savoie ("Ms. Savoie"), they are referred to in the Amended Complaint using the present perfect tense to describe their employment status with YNHHS. See id. at ¶¶ 17–20. The Amended Complaint does not specify the dates these remaining plaintiffs were hired or terminated. See id. All that is alleged is that these remaining plaintiffs, Ms. Miner, Ms. Grasso, Ms. Farrelly, and Ms. Savoie, refused to receive the COVID-19 vaccine and were required to submit to weekly COVID-19 test results. Id. at ¶ 35.

This court dismissed the plaintiffs' First Amended Complaint which attempted to establish state action by way of the following key allegations: (1) receipt of public funds to implement COVID-19 policies, Id. at ¶ 43; (2) government paid financial bonuses for hospital admissions, Id. at ¶ 45; (3) agreements to administer PCR tests, Id. at ¶ 52; (4) references to YNHHS in Connecticut's 2020 MVP, Id. at ¶¶ 70–73; (5) the involvement of Yale-affiliated individuals in state advisory groups, Id. at ¶¶ 76–89; and (6) assertions that public and private institutions collaborated to shape public health policies in a way that incentivized certain COVID-19 outcomes, Id. at ¶¶ 50.

5

This court will only examine the plaintiffs' new allegations. These new allegations primarily are as follows: (1) the State of Connecticut's MVP was jointly developed by YNHHS and the State and included a shared definition of "vaccine mandate," along with an agreement that YNHHS and other institutions would contemporaneously implement mandates to compel employee vaccination, id. at ¶¶ 73, 75–79); (2) following a decline in vaccine demands, YNHHS and the State mutually agreed to proceed to Phase 3 of the Plan, under which each entity implemented a COVID-19 vaccine mandate within their "institutional jurisdictions," conditioning employment on vaccination status, id. at ¶¶ 92–93; (3) YNHHS and the State coordinated their public announcements to reinforce each other's mandates—allegedly with YNHHS announcing first and Governor Lamont referencing Yale's policy to support a similar state directive, id. at ¶¶ 94, 103; (4) YNHH and the State agreed that the CHA would issue a recommendation for all Connecticut healthcare providers to adopt similar mandates, which private institutions would then follow, id. at ¶¶ 95–96, 98–99; (5) Dr. Balcezak, Executive Vice President and Chief Clinical Officer for Yale New Haven Health Systems, acting in his official capacity, made decisions in both the CHA's recommendation and YNHHS' internal decision to adopt the mandate, id. at ¶¶ 100–101; (6) Governor Lamont issued an executive order one month after YNHHS' announcement, citing private sector mandates as justification for a similar policy applicable to state employees, alleging that YNHHS and the State were jointly and inextricably responsible, id. at ¶¶ 102–103; and (7) YNHHS and the State through mutual agreement planned to coerce individuals, including the plaintiffs, into receiving the COVID-19 vaccine under threat of termination, id. at ¶¶ 153–157.

B. <u>Relevant Procedural Background</u>

The plaintiffs, some initially unnamed, filed their first Complaint in July 2024, alleging violations of their civil liberties and equal protection rights. <u>See</u> Complaint (Doc. No. 1). The plaintiffs desired to proceed anonymously, which the defendants opposed. <u>See</u> Motion to Proceed under Fictitious Name; Objection to Motion (Doc.'s No.'s 12,20). The defendant moved to dismiss the initial Complaint. <u>See</u> Motion to Dismiss (Doc. No. 25). The court denied the anonymous filings and ordered an Amended Complaint filed which disclosed their identities. <u>See</u> Ruling on Motion to Proceed under Fictitious Name (Doc. No. 28). Plaintiffs complied and disclosed unnamed parties and added factual allegations in the Amended Complaint. <u>See</u> Amended Complaint (Doc. No. 31). The defendant moved to dismiss once again. <u>See</u> Motion to Dismiss the Amended Complaint (Doc. No. 34). Plaintiffs opposed the Motion. <u>See</u> Opposition Motion to Dismiss Amended Complaint (Doc. No. 45). This court granted the defendant's Motion to Dismiss the Amended Complaint. <u>See</u> Ruling Motion to Dismiss Amended Complaint (Doc. No 58). The plaintiffs were granted leave to amend: the plaintiffs filed a Second Amended Complaint which is now before the court. <u>See</u> Sec. Am. Compl. (Doc. No 63).

## III.    LEGAL STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id</u>. Reviewing a motion to

7

dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a Complaint as true, and draws all reasonable inferences in the nonmovant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action."  See Iqbal, 556 U.S. at 678.

## IV.    DISCUSSION

According to the plaintiffs, their section 1983 claims arise from YNHHS having allegedly violated their constitutional rights by (1) requiring that the plaintiffs receive COVID-19 vaccines, even though such vaccines were allegedly ineffective at preventing the infection or transmission of the SARS-CoV-2 virus, see Sec. Am. Compl. at ¶¶ 141–156; and (2) treating the unvaccinated plaintiffs in an arbitrary and capricious manner by requiring them to undergo regular COVID-19 testing, when these plaintiffs were allegedly no more likely to contract the virus than vaccinated employees.  Id. at ¶¶ 157-168.  YNHHS responds that the plaintiffs' claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for two reasons; first, the plaintiffs fail to show how YNHHS' treatment of its employees amounts to state action; and second, the plaintiffs have failed to allege a constitutional violation.  See Def.'s Mem. at 6–16; Def.'s Reply at 1–8.  This court has already dismissed the initial Complaint; thus, it will only examine if the additional allegations are sufficient to plausibly allege State action.

To successfully plead a section 1983 claim, a plaintiff must allege two elements. First, "the conduct complained of must have been committed by a person acting under color of state law."  See Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994).  Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States."  Id.

The court will consider whether the allegations contained in the Second Amended Complaint plausibly suggest YNHHS' alleged actions can be characterized as arising under the color of state law.  Only if the plaintiffs plausibly allege YNHHS acted under color of state law will the court consider whether the plaintiffs' Amended Complaint contains allegations that plausibly give rise to the inference that YNHHS violated the plaintiffs' constitutional rights.

    A.    <u>Alleged State Action</u>

A plaintiff can establish that the actions of a private entity, such as YNHHS, amount to state action through a number of ways.  <u>See</u> <u>Benzemann v. Citibank N.A.</u>, 622 F. App'x 16, 17 (2d Cir. 2015) (describing various tests for determining if a private party acts under color of state law).  Here the plaintiffs claim they allege that YNHHS acted under color of state law through "joint activity," also called the "joint action test" or the "close nexus test".  <u>See id</u>.; Pltf's Opp'n at 5.

The plaintiffs here assert again in their second Complaint that YNHHS violated their rights to bodily autonomy and substantive due process by requiring them to receive COVID-19 vaccines which were allegedly not effective in the prevention or transmission of COVID.  <u>See</u> Sec. Am. Compl. at ¶¶ 141–157.  They assert that by mid-2021, public health authorities had already conceded that vaccinated individuals could still contract and spread COVID-19, thus negating any rational public-health justification for the vaccine mandate.  <u>Id</u>. at ¶¶ 147–150.  Building upon the prior assertion from their original Complaint, the plaintiffs add more new allegations.  First, the plaintiffs claim that YNHHS and the State of Connecticut willingly and intentionally engaged in a joint plan to coerce every resident to take a vaccine, regardless of whether it was safe or effective.  <u>Id</u>. at ¶¶ 73-79, 153.  Second, the primary component of this joint action was

a mutual agreement that, when the number of voluntary vaccine recipient was diminished, both YNHSS and the State would implement a vaccine mandate policy that conditioned employment on having a vaccine. Id. at ¶¶ 92-93, 154. Third, that the public announcements were coordinated. Id. at ¶¶ 94, 103. Fourth, that YNHHS and the State in secret agreed that CHA would issue a recommendation encouraging healthcare providers to adopt mandates, which the private hospitals would then follow. Id. at ¶¶ 95-99. Fifth, that Dr. Balcezak participated in the CHA's and YNHHS' internal decision process to force the mandate. Id. at ¶¶100-101. Sixth, that Governor Lamont issued executive orders that mirrored YNHHS, which demonstrated joint responsibility between YNHHS and the State. Id. at 102-103. Finally, YNHHS and the State allegedly jointly agreed to pursue their identical mandate to coerce individuals, in order to pursue the objective of maximizing the number of individuals who received the vaccine; without this joint agreement neither YNHHS nor the State would have implemented a vaccine requirement. Id. at ¶ 153-156. On this basis, the plaintiffs argue that YNHHS and the State of Connecticut acted jointly, to coerce compliance regarding the vaccines. Id. at ¶ 157. Thus, under Jacobson v. Massachusetts, this joint action allegedly constituted state action and violated their civil liberties because the mandate lacked any real or substantial relation to protection public health. Id.

YNHHS disputes the allegations in the Second Amended Complaint as not raising a plausible inference of a close nexus between the hospital and the State of Connecticut. See Def.'s Mem. at 8,12; Def.'s Reply at 4-5. YNHHS details how none of the three circumstances where a private entity may be deemed a state actor applies in this circumstance. See Def.'s Mem. at 10-13. (YNNHS alleges that here there is no

applicability of the joint action, compulsion or public function tests).  YNNHS points out

that the Second Circuit has already rejected a similar 1983 claim based on state

funding.  Id. at 7, citing Fabrikant v. French, 691 F.3d 193, 207 (2d Cir. 2012).  Further,

YNHHS alleges that plaintiff Ms. Baunach fails to allege any connection between the

vaccine mandate and the challenged conduct.  Id. at 8; Def.'s Reply at 5-6.

YNHHS argues that plaintiffs' claims fail for two independent reasons.

First, YNHHS claims that the Second Amended Complaint merely repackages

the previously rejected allegations without adding any specific plausible allegations

showing the State directed, controlled, or participated in YNHHS employment decisions.

See Def.'s Mem at 9-12.  YNHHS argues that general coordination on public health,

receipt of funds, and participation in health advisory groups do not transform a private

hospital into a state actor.  Id. (describing amended allegations at Second Amended

Complaint ¶¶ 16-20, 43-52, 73-79, 94-104).

Second, YNHHS argues that, even if state action is assumed, the vaccine

requirement does not violate any constitutional claims as a matter of law.  See Def.'s

Reply at 6.  YNHHS points out that courts have repeatedly upheld similar measures,

even ones imposed during a public health emergency.  Id. at 7.  Additionally, YNHHS

notes that employees were permitted to request exceptions and, when granted,

remained employed subject to testing requirements.  Id.

A private institution "will not be held to constitutional standards unless 'there is a

sufficiently close nexus between the State and the challenged action of the regulated

entity so that the action of the latter may be fairly treated as that of the State itself.' "

See Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 52 (1999) (citing Jackson v.

Metropolitan Edison Co., 419 US 345, 350 (1974)).  A private actor may be viewed as a state actor if the private actor operates as a willing participant in the joint activity with the State.  See Cranley v. Nat'l Life Ins. Co. of Vermont, 318 F.3d 105, 112 (2d Cir. 2003).

The extent of the allegations connecting YNHHS to the State of Connecticut amount to observations that YNHHS, or individuals affiliated with it, served as advisors to state or private working groups attempting to formulate various COVID-19 response policies, and that YNHHS received funding for performing COVID-19 services pursuant to these same policies.  See supra, Part II, Part IV.A.

In alleging a defendant acted under color of state law, "[i]t is not enough . . . for a plaintiff to plead state involvement in some activity of the institution alleged to have inflicted injury upon a plaintiff; rather, the plaintiff must allege that the state was involved with the activity that caused the injury giving rise to the action."  Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257–58 (2d Cir. 2008) (emphasis added) (internal quotation marks omitted).

The allegations do not plausibly suggest that the State and YNHHS operated as willful joint participants in requiring YNHHS staff members to receive COVID-19 vaccinations or undergo COVID-19 testing, let alone terminate employees for failing to become vaccinated.  The plaintiffs' own allegation acknowledge that the policies requiring them to receive COVID-19 vaccinations or tests were the result of policies adopted by YNHHS, not State law or regulations made applicable to YNHHS as a result of a coordinated effort undertaken by YNHHS and the State.  See Am. Compl. at ¶¶ 2,

28–35, 60, 94-96, 98-103 (describing YNHHS policy announcement, and implementation of its own COVID-19 vaccination and testing policies).

That YNHHS received state funding for administering COVID-19 related services does not plausibly support an inference that the State and YNHHS operated at a sufficiently close nexus.  As the Second Circuit has explained, simply because a private entity receives government funding for performing certain services does not mean the private entity is a state actor.  See Fabrikant v. French, 691 F.3d 193, 207 (2d Cir. 2012); Cranley v. Nat'l Life Ins. Co. of Vermont, 318 F.3d at 112.

Even if taking the plaintiff's factual allegations as true, their claims still do not plausibly allege state action or a constitutional violation.  The plaintiffs added multiple new paragraphs to the Second Amended Complaint.  First, the plaintiffs describe Connecticut's Vaccination Plan.  See Am. Compl. at ¶¶ 73-79.  While multiple of these paragraphs allege mutual agreement or joint agreement, these statements are simply conclusory.  Id.  The plaintiffs allege that a specific Professor of Medicine who works at Yale was selected to be part co-chair of a state vaccine advisory committee.  Id. at ¶¶ 83-85.  Additionally, the plaintiffs describe the CHA's recommendations on vaccines.  Id. at 93-104.  However, these newly added section simply shows a temporal proximity between YNHHS' and the State's mandates around vaccines and thus fall short of showing a sufficiently close nexus to attribute a private hospitals internal policy to the State.  See Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257–58 (2d Cir. 2008).  The plaintiffs' new allegations are often conclusory and do not plausibly allege State involvement.  The CHA is not the State of Connecticut; therefore, the CHA's recommendations cannot be deemed to be State action.  Connecticut Governor

13

Lamont cited multiple private hospital mandates, including the YNHHS mandate, as support for his own later-in-time Executive Order. Additionally, the State's vaccination policy applied exclusively to state employees, not to YNHHS, where the plaintiffs worked. At most, these allegations show a parallel process of decision making and policy alignment, something one would expect to see in response to a nationwide public health crisis; this does not allege willful joint participation or State coercion. This reasoning is reflected in other courts, such as in Cagle where the District Court dismissed the plaintiff's claims despite a Cornell University Hospital vaccine mandate being implemented pursuant to a New York statute, which is a far stronger connection to State action than any allegation in this instant case. See Cagle v. Weill Cornell Med., No. 22-CV-6951 (LJL), 2024 WL 3520469, at *6 (S.D.N.Y. July 24, 2024), aff'd, No. 24-2427, 2025 WL 2790408 (2d Cir. Sept. 30, 2025) (court granted Motion to Dismiss due to no State action for defendant when former nurse sued Weill Cornel Medicine, a private university hospital, after employee was terminated her from her position for failing to get vaccinated against COVID-19 as required by New York Department of Health mandate).

Furthermore, this court's conclusion that the plaintiffs have not alleged facts sufficient to establish that YNHHS acted under color of state law aligns with similar holdings of other courts within this Circuit, which have held that private hospital systems like YNHHS generally do not operate under color of state law. See Febres v. Yale New Haven Hosp., No. 19-CV-1195 (KAD), 2019 WL 7050076, at *2 (D. Conn. Dec. 23, 2019) ("As a general rule, private hospitals do not act under color of state law for [section] 1983 purposes." (internal quotation marks omitted)); Davis v. Yale New Haven

14

Hosp., No. 3:16-CV-01578 (VLB), 2017 WL 6459499, at *5 (D. Conn. Dec. 11, 2017)

("[I]t is conceivable that Yale New Haven Hospital receives some public funding, and is

accordingly tied to the State in some way . . . such a general tie to the State is

insufficient to support Plaintiff's claims [that the Defendants were acting under color of

state law]"); see also Phillips v. White Plains Hosp., No. 23-CV-11326 (KMK), 2025 WL

448808, at *5 (S.D.N.Y. Feb. 10, 2025) ("Plaintiffs provide no information suggesting

that White Plains Hospital's actions are fairly attributable to the state or constitute willful

joint activity with the state"); Cheeks v. Montefiore Med. Ctr., No. 23-CV-2170 (JMF),

2023 WL 8235755, at *1 (S.D.N.Y. Nov. 28, 2023) ("Montefiore, as a private hospital, is

not a state actor for purposes of Section 1983").

   Based on all the above, this court concludes the plaintiffs have failed to plausibly

allege sufficient facts that YNHHS acted under color of state law.

   To successfully plead a section 1983 claim, the plaintiff must be able to allege

two elements.  First, "the conduct complained of must have been committed by a

person acting under color of state law."  See Pitchell v. Callan, 13 F.3d at 547.  Second,

"the conduct complained of must have deprived a person of rights, privileges or

immunities secured by the Constitution or laws of the United States."  Id.  The court has

found that the plaintiffs are not able to allege the first element.  Having concluded that

the plaintiffs failed to plausibly allege facts sufficient to support an inference that

YNHHS acted under color of state law, this court will end its analysis there.  The court

need not address the question of whether the plaintiffs' allegations plausibly suggest

YNHHS violated their rights under the Constitution.

The court concludes that the plaintiffs fail to plausibly allege that YNHHS acted under the color of state law and therefore grants the defendant's Motion to Dismiss.

B.    <u>No Leave to Replead and Dismissal with Prejudice</u>

Turning to the issue of repleading, pursuant to Federal Rule of Civil Procedure 15(a) "the court should freely give leave when justice so requires." <u>Id</u>. Indeed, in this Circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." <u>See</u> <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 48 (2d Cir. 1991). It is appropriate to deny leave to plead "where there is no merit in the proposed amendments or amendment would be futile." <u>See</u> <u>Hunt v. All. N. Am. Gov't Income Tr., Inc.</u>, 159 F.3d 723, 728 (2d Cir. 1998). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." <u>See</u> <u>Lucente v. Int'l Bus. Machines Corp.</u>, 310 F.3d 243, 258 (2d Cir. 2002).

The plaintiffs were given three chances to meet the standard for pleading. First, the plaintiff's filed the initial Complaint (Doc. No. 1). The court allowed an Amended Complaint (Doc. No. 34) and a Second Amended Complaint (Doc. No. 63). The court granted the first Motion to Dismiss the Amended Complaint, finding that the plaintiffs had not adequately alleged state action. <u>See</u> Ruling on Motion to Dismiss (Doc. No. 58). Defendant now moves to dismiss the plaintiff's Second Amended Complaint with prejudice. <u>See</u> Def.'s Reply at 3. When a plaintiff does not correct the defects in an initial pleading through the filing of a more detailed amended complaint, the amended complaint may be dismissed with prejudice. <u>See</u> <u>Liner v. Goord</u>, 115 F. Supp. 2d 432, 434 (S.D.N.Y. 2000); <u>Denny v. Barber</u>, 576 F.2d 465, 471 (2d Cir.1978); <u>see</u> <u>also</u> <u>Yout, LLC v. Recording Indus. Ass'n of Am.</u>, Inc., 633 F. Supp. 3d 650, 680 (D. Conn. 2022); <u>Errato v. Am. Express Co.</u>, 646 F. Supp. 3d 402, 413 (D. Conn. 2022).

16

Three attempts are sufficient to convince this court that, in this instant case, further efforts to amend would be futile. Therefore, the Second Amended Complaint is dismissed with prejudice.

**V.     CONCLUSION**

For the reasons discussed above, the court grants the YNHHS' Motion to Dismiss the Plaintiff's Second Amended Complaint (Doc. No. 63); consequently, both counts of the Second Amended Complaint are dismissed with prejudice and the Clerk is directed to close the case.

**SO ORDERED.**

Dated at New Haven, Connecticut this 24th day of November 2025.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge